```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF GEORGIA
                      ATHENS DIVISION

GRETSCH STONE, LLC,            *

     Petitioner,               *

vs.                            *
                                    CASE NO. 3:20-MC-2 (CDL)
UNITED STATES OF AMERICA,      *

     Respondent.               *
```

O R D E R

The Internal Revenue Service is examining a tax deduction Gretsch Stone, LLC ("Petitioner") took for a conservation easement on its 2016 federal income tax return. As part of its investigation, the IRS issued three summonses to Pinnacle Bank, which had issued loans that used the donated land as collateral. First, the IRS issued a summons in December 2019, but Pinnacle asked the IRS to amend the summons to fix the formatting of the loan number. Second, the IRS issued a summons in January 2020, but Petitioner filed a petition to quash that summons due to some procedural errors, and the IRS later withdrew that summons. Third, the IRS issued a summons in March 2020, and Petitioner filed a petition to quash it. The IRS filed a motion to dismiss the petition. As discussed below, the IRS's motion to dismiss the petition (ECF No. 2) is granted, and Petitioner's motion to quash the March 2020 summons (ECF No. 1) is denied.

**I.      Framework Governing Enforceability of IRS Summonses**

"Congress has 'authorized and required' the IRS 'to make the inquiries, determinations, and assessments of all taxes' the Internal Revenue Code imposes." *United States v. Clarke*, 573 U.S. 248, 249-50 (2014) (quoting 26 U.S.C. § 6201(a)).  In support of that authority, Congress granted the IRS "broad latitude to issue summonses '[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . ., or collecting any such liability.'" *Id.* at 250 (alterations in original) (quoting 26 U.S.C. § 7602(a)).  "Such a summons directs a taxpayer (or associated person) to appear before an IRS official and to provide sworn testimony or produce 'books, papers, records, or other data . . . relevant or material to [a tax] inquiry.'" *Id.* (alterations in original) (footnote omitted) (quoting 26 U.S.C. § 7602(a)(1)).  Where, as here, "the IRS issues a summons to a third-party, as § 7602(a)(2) allows, it is subject to additional procedural safeguards. Specifically, the taxpayer must be provided with 'notice of the summons,' which includes 'a copy of the summons which has been served' and 'an explanation of the right . . . to bring a proceeding to quash the summons.'" *Redfern v. United States*, 797 F. App'x 458, 460 (11th Cir. 2019)

2

(per curiam) (alteration in original) (quoting 26 U.S.C. § 7609(a)(1)).

To guard against potential abuses of the IRS's broad summons power, "the courts—and not the IRS—are authorized to enforce this summons power." *Presley v. United States*, 895 F.3d 1284, 1288 (11th Cir. 2018). The Supreme Court "set forth the analytical framework that governs the courts' enforcement decisions." *Id.* (citing *United States v. Powell*, 379 U.S. 48 (1964)). "First, for the government to establish a prima facie case for enforcement, it must demonstrate that (1) the investigation has a legitimate purpose, (2) the information summoned is relevant to that purpose, (3) the IRS does not already possess the documents sought, and (4) the IRS has followed the procedural steps required by the tax code." *Id.* at 1288-89 (citing *Powell*, 379 U.S. at 57-58).[1] "If the government satisfies *Powell*, the 'burden shifts to the taxpayer "to disprove one of the four *Powell* criteria, or to demonstrate that judicial enforcement should be denied on the ground that it would be an 'abuse of the court's process."'" *Id.* at 1289

---

[1] Here, the IRS is not seeking judicial enforcement of a summons, but it does contend that Petitioner's motion to quash should be dismissed and that it has met the *Powell* elements. The IRS acknowledges that when an IRS summons is challenged, *Powell* provides the applicable standards. The IRS argues that since it is not cross-petitioning to enforce its summons, then it does not have to establish a prima facie case under *Powell*. Nonetheless, the IRS asserts that its agent's declaration does establish a prima facie case under *Powell* and that Petitioner has not disproved any of the *Powell* elements. The Court will proceed under the general *Powell* framework.

3

(quoting *United States v. Centennial Builders, Inc.*, 747 F.2d 678, 680 (11th Cir. 1984)).

To make the required showing under *Powell*, "the IRS usually files an affidavit from the responsible investigating agent." *Clarke*, 573 U.S. at 250. "The taxpayer, however, has an opportunity to challenge that affidavit, and to urge the court to quash the summons 'on any appropriate ground[.]'" *Id.* (quoting *Reisman v. Caplin*, 375 U.S. 440, 449 (1964)). Summons enforcement proceedings are meant to be "summary in nature." *Id.* at 254 (quoting *United States v. Stuart*, 489 U.S. 353, 369 (1989)). "The purpose of a summons is 'not to accuse,' much less to adjudicate, but only 'to inquire.'" *Id.* (quoting *United States v. Bisceglia*, 420 U.S. 141, 146 (1975)). Thus, a "court may inquire as to only whether the 'IRS issued a summons in good faith, and must eschew any broader role of oversee[ing] the [IRS's] determinations to investigate.'" *Presley*, 895 F.3d at 1289 (alterations in original) (quoting *Clarke*, 573 U.S. at 254). Again, "absent contrary evidence, the IRS can satisfy that standard by submitting a simple affidavit from the investigating agent." *Clarke*, 573 U.S. at 254. The Supreme Court has "rejected rules that would 'thwart and defeat the [IRS's] appropriate investigatory powers.'" *Id.* (quoting *Donaldson v. United States*, 400 U.S. 517, 533 (1971), *superseded*

4

*on other grounds as stated in Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 315 (1985)).

"As part of the adversarial process concerning a summons's validity, the taxpayer is entitled to examine an IRS agent," but only "when he can point to specific facts or circumstances plausibly raising an inference of bad faith." *Id.* "Naked allegations of improper purpose are not enough: The taxpayer must offer some credible evidence supporting his charge." *Id.* "But circumstantial evidence can suffice to meet that burden; after all, direct evidence of another person's bad faith, at this threshold stage, will rarely if ever be available." *Id.* So, to be entitled to examine an IRS agent as part of a challenge to an IRS summons, the taxpayer must "make a showing of facts that give rise to a plausible inference of improper motive." *Id.* "That standard will ensure inquiry where the facts and circumstances make inquiry appropriate, without turning every summons dispute into a fishing expedition for official wrongdoing." *Id.* at 254-55 (concluding that the Eleventh Circuit erred in viewing "bare allegations of improper purpose as entitling a summons objector to question IRS agents").

## II. Factual Background

Petitioner donated a conservation easement related to its property in Oglethorpe County, Georgia and claimed a

5

conservation easement donation deduction for the 2016 tax year. LaFleur Decl. ¶ 3, ECF No. 2-1. The IRS is conducting an examination to determine Petitioner's correct federal tax liabilities for 2016, and that includes evaluating the claimed conservation easement donation deduction. *Id.* IRS Revenue Agent Benjamin M. Brantley began the examination of Petitioner, and IRS Revenue Agent Curtis L. LaFleur took over the examination in late 2019. *Id.*

The most common way of valuing the tax benefit of a conservation easement is to use the before-and-after method: the value of the property with no easement restrictions (before) versus the value of the property with the easement restrictions (after). *Id.* ¶ 5. So, in evaluating a claimed conservation easement donation deduction, the IRS finds that "appraisals that predate the desire to obtain tax benefits can provide a useful data point." *Id.* ¶ 6. Here, at the time of the donation, the land was used as ranchland. Petitioner asserted that the property had an option for development and use as a gravel mine and that the property would be worth $17,135,000 based on this use, while it would be worth only $163,000 if mining were prohibited. *Id.* ¶ 8. The IRS is now examining the appropriateness of Petitioner's "before" valuation. *Id.* ¶ 9.

During the examination, Agent Brantley issued information document requests to Petitioner, asking Petitioner to provide

6

copies of all appraisals of the property that were completed for financing or any other purpose, whether they were completed before or after the donation date; copies of the appraisers' invoices; copies of cancelled checks showing payments to any appraisers; copies of all documents, data, reports, and agreements given to the appraisers; copies of all correspondence between the appraisers, donor, and grantee; and documents relating to mortgages and loan applications, including records that any encumbrances had been paid off. *Id.* ¶¶ 10-11. In response to these document requests, Petitioner provided several documents, including a 2005 commercial loan agreement and commercial promissory note between Gretsch Enterprises, Inc. (an entity affiliated with Petitioner that owned the property before it was transferred to Petitioner) and Pinnacle Bank. *Id.* ¶ 13. The loan agreement listed the relevant property as collateral. *Id.* In 2013, Gretsch Enterprises, Inc. secured the property as collateral for another loan from Pinnacle. *Id.* ¶ 14. Based on the existence of these loans, Agent LaFleur believes "that there is a reasonable likelihood that Pinnacle had an appraisal done of the Property." *Id.* ¶ 14. When it responded to the IRS's document requests, Petitioner did not provide any documents related to appraisals of the property conducted by Pinnacle. *Id.* ¶ 15. In addition, Petitioner's documents created confusion

7

about whether all the Pinnacle loans had been paid off at the time of the donation. *Id.* ¶ 38.

To verify the information Petitioner had provided and to determine whether Pinnacle had conducted an appraisal, Agent LaFleur decided to issue a summons to Pinnacle. *Id.* ¶ 16. Before he issued the December 2019 summons, Agent LaFleur had never issued a third-party summons. *Id.* ¶ 44. The December 2019 summons ("December Summons") requested production of four categories of records, including records related to appraisals and repayment. *Id.* ¶ 17; Mot. to Quash IRS Summons Ex. 2, IRS Summons (Dec. 18, 2019), ECF No. 1-5 at 7-8. The December Summons identified Petitioner's property using the loan number listed on a document provided by Petitioner. LaFleur Decl. ¶ 17. Agent LaFleur's manager, Charles Daniel, signed the December Summons. Pinnacle's legal counsel contacted Agent LaFleur to inform him that the bank did not recognize the loan number, and counsel asked that Agent LaFleur amend the summons to omit the loan number. *Id.* ¶ 20. Accordingly, LaFleur revised the summons to remove the loan number and ask for documents pertaining to all loans relating to the property; the categories of requested records were the same as in the December Summons. *Id.* ¶ 22. Agent LaFleur believed that the updated summons, issued on January 8, 2020 ("January Summons") was simply a revision of the December Summons and that he did not

8

need to get his manager to sign the form again or give Pinnacle a full 23 days to respond as required under 26 U.S.C. § 7609(a). *Id.* ¶¶ 23-24. Agent LaFleur's manger also believed that it was unnecessary for him to sign the revised summons. Daniel Decl. ¶ 6, ECF No. 2-2.

Agent LaFleur received a package from Pinnacle in response to the January 2020 summons. Petitioner filed a petition to quash the January 2020 summons, so Agent LaFleur has not used or relied on Pinnacle's response, and he has kept the documents under seal pending the Court's consideration of Petitioner's present petition. LaFleur Decl. ¶¶ 25, 32. To fix the procedural errors with the January Summons that Petitioner identified in its petition, Agent LaFleur issued a new summons on March 10, 2020 ("March Summons") to Pinnacle and informed Pinnacle that the March Summons withdrew and replaced the January Summons. *Id.* ¶ 28. The March Summons seeks the same information as the January Summons and the December Summons. *Id.* ¶ 30. Agent LaFleur's manager approved the March Summons, and Agent LaFleur provided Petitioner with notice of the March Summons via certified mail. *Id.* ¶¶ 28-29. Petitioner filed a motion to quash the March 2020 summons. That petition, along with the IRS's motion to dismiss it, are presently pending.

9

## III. Discussion

Petitioner argues that the IRS did not meet the applicable standards for enforcement under *Powell*. The IRS contends that it did. The Court will examine each *Powell* factor in turn.

### A. *Powell* Factor 1: Purpose of Investigation

The first question is whether the investigation was for a proper purpose. The IRS presented evidence that Agent LaFleur is conducting an examination to determine Petitioner's correct federal tax liabilities for 2016, and that includes evaluating the claimed conservation easement donation deduction. This is a proper purpose for an IRS investigation. *See* 26 U.S.C. § 7602(a) (stating that the IRS is authorized to conduct examinations for several purposes, including "ascertaining the correctness of any return"). Petitioner contends that the IRS issued the March Summons for an improper purpose—to put pressure on Petitioner to settle a collateral dispute. Petitioner asserts that the collateral dispute in question is its petition to quash the January Summons. But that summons was withdrawn due to procedural problems, the petition was dismissed as moot, and the March Summons was issued to correct the errors.[2] The only "active" summons is the March 2020 summons, and it seeks to

---

[2] Petitioner seems to argue that the IRS was not allowed to withdraw the January 2020 summons and issue a new one to correct procedural deficiencies. Petitioner did not cite any authority for this argument.

10

obtain property value information—including appraisals—and clarify confusion about the timing of the loan payoff.

Petitioner also argues that because Agent LaFleur and his supervisor made some mistakes in issuing the January 2020 summons, the investigation has not been conducted pursuant to a legitimate purpose and the IRS thus has not exercised prudent judgment in wielding the powers granted to it by the Internal Revenue Code.  Petitioner argues that the IRS's withdrawal of the January Summons and its issuance of the March Summons to correct deficiencies "may be the most egregious facts surrounding a summons enforcement action filed in any court in decades."  Pet'r's Resp. to Mot. to Dismiss 10, ECF No. 3. Petitioner points out that the Supreme Court in *Powell* noted that in enacting 26 U.S.C. § 7605(b), Congress intended to curb the "investigating powers of low-echelon revenue agents" by requiring them "to clear any repetitive examination with a superior."  *Powell*, 379 U.S. at 56.  Section 7605(b) states that no taxpayer "shall be subjected to unnecessary examination or investigations" and that a taxpayer's books may only be inspected once for each taxable year unless the IRS "notifies the taxpayer in writing that an additional inspection is necessary."  Here, though, there is no repetitive investigation. Although the IRS issued three summonses to Pinnacle, there is only one summons that has not been withdrawn: the March Summons.

11

And, as Petitioner acknowledges, each summons was an attempt to cure deficiencies in the prior summonses; when the IRS discovered that it made mistakes in its January Summons, it tried to fix them instead of defending the defective summons. For these reasons, the Court finds that the IRS has established that its investigation was for a proper purpose, and Petitioner did not prove otherwise.

    B.   *Powell* Factor 2: Relevance of Information

The second question is whether the information summoned is relevant to the investigation's purpose. The Tax Code permits the IRS to "examine any books, papers, records, or other data which may be relevant or material" to an investigation. 26 U.S.C. § 7602(a)(1). "The standard of relevance applicable to an IRS summons is different from that employed by a court when deciding whether to admit evidence at trial." *La Mura v. United States*, 765 F.2d 974, 981 (11th Cir. 1985). The IRS's "burden of showing relevance in this context is slight." *Id.* "If the information sought by an IRS summons 'might throw light upon the correctness of the taxpayer's return,' then it is deemed to be relevant." *Id.* (quoting *United States v. Wyatt*, 637 F.2d 293, 300 (5th Cir. 1981)). Thus, to establish relevance, the IRS must "demonstrate that it has a 'realistic expectation rather than an idle hope that something might be discovered.'" *Id.* (quoting *Wyatt*, 637 F.2d at 300-01).

Petitioner did not explain how the documents sought are irrelevant under the liberal standard of relevance applicable to an IRS summons.  Here, the IRS sought information regarding the appropriateness of Petitioner's "before" valuation for the property.  The IRS asked Petitioner to provide copies of all appraisals of the property, along with other information related to such appraisals.  The IRS also asked Petitioner to provide records relating to mortgages and loan applications, including records regarding encumbrances that had been paid off.  Petitioner provided documents indicating that a related entity that owned the property before it was transferred to Petitioner had loan agreements that listed the relevant property as collateral, so Agent LaFleur thought that Pinnacle, the lender, might have required an appraisal.

Although Petitioner had been asked to provide documents related to any appraisal, it couldn't or didn't, so Agent LaFleur sought the documents directly from Pinnacle.  He also sought documents from Pinnacle to clear up confusion created by Petitioner's production regarding the status of any encumbrances on the property.  Specifically, Agent LaFleur sought (1) loan records related to any loan made to Petitioner or specified related affiliates relating to the property, (2) correspondence in Pinnacle's possession exchanged by and between Petitioner and specified related affiliates relating to the property, (3)

13

appraisals or other documents relating to any opinion of the value of the property, and (4) documents regarding satisfaction of any loans associated with the property. The first three categories of documents are related to the value of the property, and the fourth category is relevant to the question whether any encumbrances remaining on the property were properly subordinated at the time of the gift. Thus, these documents are relevant to the IRS's investigation, and Petitioner did not prove that they are not.[3]

    C.    *Powell* Factor 3: IRS Possession of Documents

The third question is whether the IRS already possesses the documents sought. Petitioner appears to make two arguments on this point. First, Petitioner suggests that since it produced some loan documents in response to the document requests, those documents were in the IRS's possession and could not be obtained by a third-party summons. But, as discussed above, Petitioner either couldn't or didn't produce all of the relevant loan documents, including appraisal information and clear payoff information. And, the IRS pointed to evidence that it sought the documents directly from Pinnacle to verify the accuracy of

---

[3] Petitioner also summarily argues that the March Summons was vague and overbroad. "An IRS summons is overbroad if it 'does not advise the summoned party what is required of him with sufficient specificity to permit him to respond adequately to the summons.'" *United States v. Medlin*, 986 F.2d 463, 467 (11th Cir. 1993) (quoting *United States v. Wyatt*, 637 F.2d 293, 302 n.16 (5th Cir. Feb. 1981)). Petitioner did not point to anything in the March Summons to suggest that it did not adequately advise Pinnacle what was required.

14

Petitioner's document production. Accordingly, the IRS did not already possess the documents. Second, Petitioner appears to argue that because Pinnacle produced documents in response to the withdrawn January Summons, the IRS already possesses the documents. And Petitioner asserts that the March Summons is invalid because it did not state that Pinnacle should produce only those documents that were not produced in response to the January Summons (although the cover letter did). Again, the IRS withdrew the January Summons. It issued the March Summons to correct deficiencies in the January Summons. The IRS has not reviewed any documents produced by Pinnacle; instead, it is holding them under seal pending the Court's ruling on the present petition. Such documents are not already in the IRS's possession, and Petitioner did not establish that they are.

    D.   *Powell* Factor 4: Procedural Requirements

The fourth question is whether the IRS followed the procedural steps required by the tax code. According to the IRS, that was the whole point of withdrawing the January Summons and issuing the March Summons: to follow all the required procedural steps. Petitioner argues that the IRS did not follow applicable the procedural requirements because the IRS did not adequately notify Petitioner in writing that an examination of Pinnacle's records was necessary (even though Petitioner does not dispute that it was served with notice of the March Summons

15

as required by 26 U.S.C. § 7609(a)).  In support of this argument, Petitioner cites a portion of *Powell* discussing the Internal Revenue Code's requirement that a taxpayer be notified in writing if the IRS determines that an additional inspection of the *taxpayer's* records is necessary.  *Powell*, 379 U.S. at 58. The relevant statute provides that "only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary, after investigation, notifies the taxpayer in writing that an additional inspection is necessary." 26 U.S.C. § 7605(b). Petitioner did not point to any authority suggesting that this provision applies to examinations of third parties' records. Rather, "[t]he courts have consistently found that Section 7605(b) is a limitation upon the examination of a taxpayer's 'books of account' and 'does not apply to an examination of books of account of a third person.'" *United States v. Grayson Cty. State Bank*, 656 F.2d 1070, 1076 (5th Cir. Unit A 1981) (quoting *Geurkink v. United States*, 354 F.2d 629, 631 (7th Cir. 1965) and *Hall v. Comm'r of Internal Revenue*, 406 F.2d 706, 710 (5th Cir. 1969)).[4]

Petitioner also argues that before the IRS issued the March Summons to Pinnacle, it should have requested the responsive

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

16

documents from Petitioner. The IRS pointed to evidence that it did request the documents directly from Petitioner, and Petitioner could not or did not produce them. Moreover, the IRS pointed to evidence that it sought the documents directly from Pinnacle to verify the accuracy of and to clear up confusion caused by Petitioner's document production. Petitioner argues that the Internal Revenue Manual required the IRS to use an informal document request to the Petitioner before issuing a third-party summons. The Internal Revenue Manual does state that information document requests "should be used to request information from the taxpayer." Internal Revenue Manual § 4.46.4.6.1(1). There is a process for enforcing delinquent information document requests. *See* 4.46.4.6.3(1). But Petitioner did not point to any provision of the Internal Revenue Manual (or, more importantly, the Internal Revenue Code) that requires a similar process before issuing a third-party summons. Thus, Petitioner did not establish that the IRS failed to comply with the procedural requirements of the Internal Revenue Code.

### E.  Petitioner's Assertion of Bad Faith

Finally, Petitioner argues that the March Summons was a bad faith request designed to violate the procedural safeguards of 26 U.S.C. § 7609(d) and that it would be an abuse of the Court's process to dismiss the petition to quash it. As discussed

above, the IRS presented evidence that it withdrew the January Summons and issued the March Summons to ensure diligent compliance with the Internal Revenue Code's procedures, and the Court is not convinced that it would be an abuse of the Court's process to dismiss the petition.

The Court understands that "the taxpayer is entitled to examine an IRS agent when he can point to *specific facts or circumstances plausibly raising an inference of bad faith*." *Clarke*, 573 U.S. at 254 (emphasis added). "Naked allegations of improper purpose are not enough: The taxpayer must offer some credible evidence supporting his charge." *Id.* To be entitled to examine an IRS agent, the taxpayer must "make a showing of facts that give rise to a plausible inference of improper motive." *Id.* Petitioner did not point to any such facts. Instead, Petitioner pointed out that an agent who had never issued a third-party summons before made several mistakes in issuing the January Summons and, instead of attempting to defend a defective summons, issued a new one to fix the deficiencies. Petitioner does not believe that these were mere mistakes—it asserts that these facts reek of intentional harassment and that it should be permitted to question Agent LaFleur and his manager about why they made the mistakes they did in issuing and approving the January Summons. But without any facts that give rise to a plausible inference of improper motive, this request

18

is precisely the "fishing expedition for official wrongdoing" that is not allowed. *Clarke*, 573 U.S. 255. Accordingly, Petitioner is not entitled to an evidentiary hearing to determine whether Agent LaFleur or his manager had improper motives.

## CONCLUSION

As discussed above, the IRS satisfied all four *Powell* requirements, and Petitioner did not disprove any of them. Petitioner also did not demonstrate that dismissal of its petition to quash the March Summons would be an abuse of the Court's process. Thus, the Court is satisfied that the IRS issued the March Summons in good faith. The IRS's motion to dismiss the petition (ECF No. 2) is granted, and Petitioner's motion to quash the March 2020 summons (ECF No. 1) is denied.

IT IS SO ORDERED, this 3rd day of November, 2020.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA